**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT W. CAMPBELL, SR.,

    Plaintiff,

vs.

EDWARD S. ALAMEIDA, et al.,

    Defendants.

No. C 03-4984 PJH (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    This is a civil rights case filed pro se by a state prisoner. The remaining defendants, A. Lamarque, J. Sareli, and D. Moon, move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Plaintiff has filed an opposition. The motion is ready for decision.

## BACKGROUND

    Plaintiff's claims are based upon the defendants' roles in denying him permission to purchase and have in his cell "religious oils" called for by his religious beliefs. In the initial review order the court dismissed claims against defendants Alameida, Grannis and Zavala and ordered service on defendants Lamarque and Sareli. Plaintiff filed several requests for leave to amend, without proposed amendments; the court denied the motions but granted leave to file a complaint containing all of plaintiff's claims. In the amendment he added Chaplain Douglas Moon as a defendant; the court ordered service upon him.

    The prison has now reversed its policy and allowed plaintiff to purchase and possess religious oils.

///

///

///

**DISCUSSION**

*A. Standard of Review*

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

*B. Analysis*

Defendants contend that there is no genuine issue of material fact for trial and that on the undisputed facts they are entitled to judgment as a matter of law on the merits. They also contend that they are entitled to summary judgment on grounds of qualified immunity. The court will consider in turn how these arguments apply to each of plaintiff's claims.

Plaintiff contends that refusal to allow him to have the religious oils he sought violated his First Amendment right to free exercise of religion, his equal protection rights in that Muslim inmates were allowed religious oils, and his rights under a federal statute, the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

///

///

*1. First Amendment Free Expression claim*

    a. *Merits*

        *i. Standard*

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Id.* at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See id.* (failure to give notice allowing time for cleansing ritual, shackling, requiring sign-in for services and abusive language directed at faith failed to rise to a constitutional level).

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). There are several factors which should be considered in determining whether a restriction is reasonably related to legitimate penological interests: (1) The restriction must have a logical connection to legitimate governmental interests; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-90.

*///*

*///*

3

*ii. Analysis*

Plaintiff's declaration contains allegations which, if proved, would establish that use of religious oils is mandated by his personal religious beliefs. Pl.'s decl. at 2 ¶ 3 ("[prayer oil] is an essential element/tool that enables and enhances a Believer[']s daily worship as well as witness to Yahweh the Most High."); 5 ¶ 11 ("prayer/anointing oil ... is an element/tool intricately woven in 'my faith'"). However, no violation of his First Amendment rights can be made out if the restriction is reasonably related to legitimate penological objectives, applying the *O'Lone/Turner* factors.

It is generally the state's burden to establish a rational relationship between its limiting regulation or policy and the legitimate penological objectives it asserts. *Beard v. Banks*, 126 S. Ct. 2572, 2581-82 (2006). However, a dismissal of a claim challenging the constitutionality of a prison policy, without requiring any evidence corroborating that a rational connection exists between the prison policy and legitimate penological interests, is appropriate if a common-sense connection exists between the regulation and the legitimate governmental interest. *Whitmire v. Arizona*, 298 F.3d 1134, 1136 (9th Cir. 2002). "[E]ven in the absence of institution-specific or general social science evidence, as long as it is plausible that prison officials believed the policy would further a legitimate objective, the governmental defendant should prevail on *Turner*'s first prong." *Frost v. Symington*, 197 F.3d 348, 355 (9th Cir. 1999).

In this case, petitioner concedes that he is a follower of no particular denomination, but has taken what he believes to be the best of several versions of Christianity, along with his own interpretation of the Bible, as his religion. Pl.'s decl. at ¶ ¶ 2-3, 19-20. In his efforts to convince the defendants that his religion required personal use of religious oils, he cited many bible verses as the sole proof of that requirement, rather than providing secondary materials from an established church. *See* Am. Compl. ex. A-E.[1] In short, the religious oils

---

[1] The letter from Elder George Garner of Yahweh's Assembly in Messiah, in Rocheport, Missouri, says that "we have no studies on this anointing oil" and quotes a Bible verse regarding use of oil in anointing the sick, which is not the same as plaintiff's belief that he

4

requirement is plaintiff's own view of what his personal religion requires – which is all very well, but accommodation of such individual views in a prison setting could be very disruptive. Therefore, there is a common-sense connection between orderly administration of the prison and not allowing claims for religious accommodation that are unique to one prisoner or a very small group of prisoners. The restriction satisfies the first *Turner* test.

The second *Turner* factor, whether there are alternative means of exercising the right that remain open, should not be defined too narrowly. Rather, the "'relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in a particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmate has been denied all means of religious expression.'" *Henderson v. Terhune*, 379 F.3d 709, 714 (quoting *Ward v.Walsh*, 1 F.3d 873, 877 (9th Cir. 1993)). Obviously, in this case the denial of personal religious oil did not deny plaintiff all means of religious expression.

The third *Turner* factor is the burden that accommodating plaintiff's request would have on the prison. Although it is clear that accommodating the request would not have a significant impact in itself, allowing individual exceptions for personal religious beliefs held by only one prisoner or only a very small group of prisoners could be very disruptive, given that the authorities might be flooded with requests of all sorts. *See Henderson*, 379 F.3d 709. 714 (9th Cir. 2004) (recognizing burden on prison of exception for prisoner whose religion banned cutting hair).

The final factor is whether there are alternatives that would accommodate the right at de minimis cost to the prison. For the reasons discussed with respect to the third factor above, there are not.

Applying the *Turner* factors, the court concludes that defendants are entitled to summary judgment on plaintiff's First Amendment Free Exercise claim.

*b. Qualified immunity*

---

should use it in daily prayer.

5

Defendants also contend that they are entitled to summary judgment on plaintiff's damages claims because they are qualifiedly immune. The court will consider this as a possible alternative ground for the grant of summary judgment on this issue.

*i. Standard*

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." *Wilson v. Layne*, 526 U. S. 603 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established. *Id.* This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id.*

Even if the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205.

### ii. Analysis

The court above concludes that plaintiff has not provided allegations which, if proved, would show that his First Amendment free exercise rights were violated, the first step of the *Saucier* analysis. *Saucier*, 533 U.S. at 201. Defendants therefore are entitled to qualified immunity on this claim.

Alternatively, the court will assume, for the sake of this decision only, that plaintiff's First Amendment rights were violated and consider the second *Saucier* step, whether the right was sufficiently clearly established that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202. The court has not found, and the parties have not pointed out, any authority that suggests that prison authorities are required to accommodate religious beliefs held by only one prisoner or only a handful of prisoners. On the contrary, cases have upheld refusal to accommodate requests from prisoners who subscribe to religions which are widespread in society, though perhaps not in a particular prison. *See Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972) (not every religious sect or group within a prison must have identical facilities or personnel); *Ward*, 1 F.3d at 880 (no affirmative duty to provide prisoner with Orthodox rabbi); *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (no free exercise violation where prisoner did

7

not show prison's failure to provide him with Unitarian Universalist chaplain denied him "reasonable opportunity" to exercise his faith); *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir. 1988) (no violation where prisoner denied United Pentecostal pastor).  The defendants therefore are entitled to qualified immunity on this alternative ground.

   2.  *Equal protection*

Plaintiff contends that allowing Muslim prisoners to have prayer oils in their cells and denying him the same privilege violated his rights under the Equal Protection Clause.

   *a.  Merits*

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same.  As the Supreme Court explained in *Cruz*:

> We do not suggest . . . that every religious sect or group within a prison--however few in number--must have identical facilities or personnel.  A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.  But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

405 U.S. at 322 n.2.

Application of the *Cruz* standard does not require "strict numerical analysis" or "create a system of ratios or quotas."  *Thompson v. Commonwealth of Ky.*, 712 F.2d 1078, 1081 (6th Cir. 1983) (upholding grant of summary judgment on Muslim inmates' request for access to chapel comparable to Christian inmates).  It does require that the prison make a

8

good faith accommodation in light of practical considerations. *See Freeman*, 125 F.3d at 737; *Thompson*, 712 F.2d at 1082 (court should scrutinize the prison officials' conduct to determine whether they deliberately discriminated against the minority religion or abused their discretion in distributing the prisons' limited resources).

Defendants contend that there was no equal protection violation because plaintiff and Muslim prisoners are not similarly situated and that plaintiff's claim cannot survive the four-factor *Turner/O'Lone* test. They are correct, for the reasons discussed in the section above regarding the First Amendment claim. That is, under the *Cruz* test the defendants need not provide plaintiff with the same accommodations that are given to Muslims, and upon application of the *Turner* factors it is clear that treating plaintiff differently than a large religious group is rationally related to the legitimate penological objective of simplifying administration of the prison.

### b. *Qualified immunity*

As to the first prong of the *Saucier* test, the court has found above that plaintiff's allegations would not, even if proved, establish that defendants violated his equal protection rights. Defendants therefore are entitled to qualified immunity from damages on this claim.

### 3. RLUIPA

#### a. *Merits*

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The statute applies to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

9

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *San Jose Christian College v. Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (citing 42 U.S.C. § 2000cc-5(7)(A)). RLUIPA does not define "substantial burden." *Id.* Construing the term in accord with its plain meaning, the Ninth Circuit holds that "a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.*; *see id.* at 1035-36 (City's denial of rezoning application by College which sought to build non-secular school on property zoned for hospital use was not substantial burden on religious exercise; College could use other sites within the city and other entities would be subject to same restrictions).

In properly applying RLUIPA, courts must take into account the burden accommodations may impose upon nonbeneficiaries and must satisfy themselves that the act is being applied neutrally among different faiths. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). The accommodation must measured, so that it does not override significant interests such as safety and maintaining order. *Id.* at 721. Although the Act adopted a "compelling governmental interest" standard, the context must be considered; congress expected the courts to apply the Act with due deference to prison authorities' expertise, *id.* at 723, and prison security is a compelling state interest, *id.* at 725 n.13.

Defendants contend that their restriction on possession of prayer oil was not a substantial burden on plaintiff's religious exercise, because he was able to attend Christian services and be anointed with oil there, and if he were to fall ill, the chaplain would come to his cell to anoint him. Defs.' P. & A. at 6 (citing decl. of def. Moon at ¶ 2). Plaintiff disputes this in his declaration, saying that this alternative was never available to him in practice, because "any chapel service, be it Protestant, Catholic or Islamic was virtually non-existing;" prisoners questioned as to whether oil was offered to attendees at services always answered "no;" that the chaplain almost never conducted the services, and that the person who did conduct them said he had never been told about prayer oils or told to carry them. Pl.'s decl. at ¶ 27. Two inmates who attended protestant services support this.

10

Glen Davis decl. attached to amen. complaint at ¶ 7; Evans decl. attached to amen. complaint at ¶ 6. Also, when plaintiff was in administrative segregation and unable to leave his cell he asked defendant Moon to come to his cell and administer prayer oil, and received no response. Pl.'s decl. at ¶ 31.

In short, there is a genuine issue of material fact as to whether there was available to plaintiff an alternative to having the prayer oil in his cell, and if plaintiff's version is correct, his rights under RLUIPA were violated. Defendants are not entitled to summary judgment on the merits of this claim.[2]

### b. *Qualified immunity*

The standard for consideration of qualified immunity claims is set out above. On the first prong of the *Saucier* analysis, plaintiff has provided allegations which, if proved, would show the violation of his RLUIPA rights.

The second *Saucier* prong is whether in light of existing law it would have been clear to reasonable officers in the position of defendants that their conduct was unlawful. *Saucier*, 533 U.S. at 202. RLUIPA is relatively new, having only been passed in 2000. The events giving rise to plaintiff's claims here occurred in 2002. The only Ninth Circuit RLUIPA decision filed in 2002 or before was *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), which decided only that RLUIPA is constitutional. *Id.* at 1070. None of the other ten decisions by courts of appeals which were filed by the end of 2002 were relevant; most did not even deal with prisons.

There also were twenty-four district court decisions by the end of 2002. Only one, which held that RLUIPA was violated when Muslims were not allowed to have prayer oil in

---

[2] In view of the resolution of the grounds for summary judgment raised by defendants, the court has not considered whether RLUIPA permits suit against defendants in their individual capacity, *compare Boles v. Neet*, 402 F.Supp.2d 1237, 1240 (D. Colo. 2005) (RLUIPA actions lie against governments, and do not appear to be permitted against individuals in their individual capacities), *with Guru Nanak Sikh Society of Yuba City v. Sutter*, 326 F.Supp.2d 1128, 1136 (E.D. Cal. 2003) ("government" in RLUIPA includes officials, so actions are permitted against them at least in their official capacities), and whether money damages can be recovered for violation of RLUIPA, *see Boles*, 402 F.Supp.2d at 1241 (holding damages not available).

11

their cells for use in the five-times-a-day prayers required by their religion, is relevant. *See Charles v. Verhagen*, 220 F.Supp.2d 937, 938 (W.D. Wis. 2002), *aff'd* 348 F.3d 601 (7th Cir. 2003) (affirming district court's conclusion that RLUIPA is not unconstitutional). That case, however, involved Muslim prisoners, a group which *was* allowed to have prayer oil at Salinas Valley State Prison at the time of the events giving rise to plaintiff's claim. *Id.* As discussed in the equal protection section above, defendants were not required to give plaintiff the same accommodations afforded a large established religion, so they could not be expected to gather from a case which was consistent with their treatment of Muslims that they were required to extend the same accommodation to plaintiff. In short, at the time of the events giving rise to plaintiff's claims in 2002 relatively few court cases had been decided, and none that would have made clear to reasonable persons in these defendants' positions that what they were doing was a violation of plaintiff's rights. Defendants are entitled to qualified immunity on this claim.

*4. Injunctive relief*

Plaintiff has now been permitted to purchase and possess the religious oils he seeks. In addition to the grounds set out above for granting summary judgment, his requests for injunctive and declaratory relief are moot. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (declaratory judgment action may not be used to secure judicial determination of moot questions).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (doc 54) is **GRANTED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.03\CAMPBELL984.SJ